### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **INTERNATIONAL BROTHERHOOD** | ) | |
| **OF ELECTRICAL WORKERS,** | ) | |
| **LOCAL 1200,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Case No. 12-484 (RJL)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE DETROIT FREE PRESS, INC.,** | ) | |
| **d/b/a/ WUSA-TV,** | ) | |
| | ) | |
| **Defendant.** | | |

### MEMORANDUM OPINION
(February **12**, 2013) [Dkt. ##7, 8]

The International Brotherhood of Electrical Workers, Local 1200, ("IBEW")

brings this action against The Detroit Free Press, Inc., d/b/a/ WUSA-TV, ("WUSA")

pursuant to the Labor Management Relations Act, 29 U.S.C. § 185, for violation of the

terms of collective bargaining agreements and seeks an order from this Court directing

defendant to submit to binding arbitration.  Before the Court are plaintiff's Motion for

Summary Judgment ("Pl.'s MSJ") [Dkt. #7] and defendant's Motion for Summary

Judgment ("Def.'s MSJ") [Dkt. #8].  Upon consideration of the parties' pleadings,

relevant law, and the entire record herein, defendant's motion is GRANTED and

plaintiff's motion is DENIED.

### BACKGROUND

Plaintiff IBEW is a labor organization representing approximately fifty employees

at WUSA, a local television station.  Complaint ("Compl.") ¶¶ 3−4, 6, Mar. 28, 2012

[Dkt. #1].  Since December 2008, IBEW and WUSA have entered into two collective

bargaining agreements.  Pl.'s Statement of Undisputed Material Facts ("Pl.'s SUMF") ¶¶

5, 7, May 31, 2012 [Dkt. #7-1]; Def.'s Statement of Undisputed Material Facts ¶¶ 3, 15,

May 31, 2012 ("Def.'s SUMF") [Dkt. #8-1].  The first agreement, by its terms, covered

the period from December 29, 2008 through December 31, 2010 ("2008 Agreement").

Decl. of Allan Horlick ("Horlick Decl.") Ex. A [Dkt. #8-3].  The second agreement, by

its terms, covers the period from February 9, 2012 to February 8, 2014 ("2012

Agreement").  Compl. Ex. A [Dkt. # 1-1].

Before the 2008 Agreement expired on December 31, 2010, IBEW and WUSA

commenced negotiations for a successor agreement and agreed to extend the 2008

Agreement until February 28, 2011.  Pl.'s SUMF ¶ 5; Def.'s SUMF ¶ 12.  After February

28, 2011, WUSA refused IBEW's requests for further extension of the 2008 Agreement.

*Id.*  Nearly one year later, the parties finally reached a tentative successor agreement,

which was ratified and became effective by its terms on February 9, 2012.  Pl.'s SUMF ¶

7; Def.'s SUMF ¶ 15.  During that hiatus, however, WUSA sent one of its employees,

Karen Peterson, a termination letter on January 30, 2012, stating that her "position [was]

being eliminated effective . . . January 30, 2012" as a result of "restructuring" of

WUSA's broadcast operations "for reasons related to [WUSA's] current business and

economic climate."  Compl. Ex. B, p. 1 [Dkt. # 1-2].  Ms. Peterson was the most senior of

WUSA's full-time maintenance technicians on January 30, 2012.  Pl.'s MSJ, p. 5.  The

termination letter, curiously, stated that WUSA's decision "is being undertaken in

accordance with the IBEW collective bargaining agreement" and specifically references Ms. Peterson's recall rights, right to severance pay, and right to a service letter under the IBEW collective bargaining agreement.  Compl. Ex. B, pp. 1–2.

In that regard, the 2008 Agreement and the 2012 Agreement ("Agreements," collectively) contain identical provisions regarding layoff procedures, employees' seniority rights, grievance conferencing, and arbitration of grievances.  Compl. ¶¶ 9–14; Pl.'s SUMF ¶ 8; Def.'s SUMF ¶¶ 16, 18.  With regard to layoffs, the Agreements provide that WUSA must provide "notice in writing two (2) weeks in advance" and a "service letter" on the effective date of the layoff.  Horlick Decl. Ex. A § 4.17(A); Compl. Ex. A § 4.17(A).  The Agreements also require WUSA to bargain with the IBEW in good faith as a precondition to any layoff.  Horlick Decl. Ex. A "Side Letter A of Intent"; Compl. Ex. A. "Side Letter A of Intent."

With regard to seniority, the Agreements state, "[l]ayoffs on account of reduction of staff . . . shall be made in inverse order of seniority."  Horlick Decl. Ex. A § 4.17(D); Compl. Ex. A § 4.17(D).  The Agreements additionally provide, however, that WUSA "may retain in its employment an employee(s) of lesser seniority and lay off an employee(s) of higher seniority if to not retain such lesser seniority employee(s) would have an adverse effect on the operation of [WUSA] when all factors are considered."  Horlick Decl. Ex. A § 4.17(F); Compl. Ex. A § 4.17(F).  The Agreements also require WUSA to lay off part-time employees before laying off full-time employees.  Horlick Decl. Ex. A, "Side Letter Part-Time"; Compl. Ex. A, "Side Letter Part-Time."

With regard to any "grievances . . . in respect to the interpretation of [the Agreements]," the Agreements provide that such grievances must be "reduced to writing" and reviewed during "a formal grievance conference" attended by both parties. Horlick Decl. Ex. A § 2.01(A), (B); Compl. Ex. A § 2.01(A), (B). Where the parties are unable to reach "mutual agreement" regarding a grievance, the Agreements provide for submission of the grievance to final, binding arbitration. Horlick Decl. Ex. A § 2.01(D); Compl. Ex. A § 2.01(D).

On February 16, 2012, IBEW filed a formal grievance contesting Ms. Peterson's termination as violative of "Section 4.17 F and all other relevant Articles of the contract." Compl. Ex. C [Dkt. #1-3]. On March 13, 2012, IBEW and WUSA representatives met to discuss the grievance. Pl.'s SUMF ¶ 13; Def.'s SUMF ¶ 21. The parties were not able to resolve the grievance, and "IBEW informed WUSA [at the meeting] that it would submit the grievance to final and binding arbitration under Section 2.01 of the collective bargaining agreement." Pl.'s SUMF ¶ 13. On March 15, 2012, IBEW sent WUSA a letter demanding that it submit the grievance to arbitration. Compl. Ex. D [Dkt. #1-4]. The next day, WUSA sent a letter to IBEW, declining to submit the grievance to arbitration because Ms. Peterson's termination "occurred . . . during a contractual hiatus period in which there was no obligation, contractual or otherwise, to arbitrate grievances." Compl. Ex. E [Dkt. #1-5].

IBEW brought the present action to compel WUSA to arbitrate the grievance over Ms. Peterson's termination.

4

## STANDARD OF REVIEW

Plaintiff and defendant filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the evidence in the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When evaluating cross motions for summary judgment, "the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." *Select Specialty Hosp. – Bloomington, Inc. v. Sebelius*, 774 F. Supp. 2d 332, 338 (D.D.C. 2011) (citation omitted). The court accepts as true the evidence of, and draws "all justifiable inferences" in favor of, the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But, a party opposing summary judgment "may not rest upon the mere allegations . . . of his pleading"; instead he "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (quoting Fed. R. Civ. P. 56(e)).  A genuine issue exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## ANALYSIS

The issue before the Court is whether arbitration of the instant grievance may be compelled under the 2008 Agreement or the 2012 Agreement.  Arbitration of a dispute

occurring after the expiration of a collective bargaining agreement may be compelled if the dispute "arises under the contract." *Litton Fin. Printing Div. v. NRLB*, 501 U.S. 190, 205 (1999) ("*Litton*"). A dispute "arises under" an expired contract where: (1) the dispute "involves facts and occurrences that arose before expiration;" (2) the disputed action "infringes a right that accrued or vested under the agreement;" or (3) "[u]nder normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Id.* at 206.

Defendant argues that no agreement obligates WUSA to arbitrate the instant grievance because: (1) the grievance does not "arise under" the 2008 Agreement, and (2) Ms. Peterson's termination predated the effectiveness of the 2012 Agreement. Def.'s MSJ, pp. 8–15. I agree.

The grievance here does not arise under the 2008 Agreement. How so? First, Ms. Peterson's termination does not involve facts or occurrences that arose before the 2008 Agreement expired on February 28, 2011. The January 30, 2012 termination letter states that WUSA eliminated Peterson's position "for reasons related to our *current* business and economic climate." Compl. Ex. B, p. 1 (emphasis added). Second, Ms. Peterson's termination did not, as she argues, infringe a right that accrued or vested under the 2008 Agreement. The contractual rights claimed by Ms. Peterson are not the kind of rights that are presumed to accrue or vest under a collective bargaining agreement, and there is no language in the 2008 Agreement indicating that the parties mutually intended the rights to be vested. Third, the contractual rights claimed by Ms. Peterson did not survive the

expiration of the 2008 Agreement on February 28, 2011.[1]  In sum, there is no language in the 2008 Agreement indicating that the parties mutually intended these rights to survive.

Moreover, the seniority rights provided by the 2008 Agreement are not the kind of rights that are presumed to accrue or vest under a collective bargaining agreement because they are not "obligations already *fixed* under the contract but as yet unsatisfied." *See Litton*, 501 U.S. at 206 (emphasis added).  Like the employees' seniority rights at issue in *Litton*, the employees' seniority rights here were qualified in the 2008 Agreement.  In *Litton*, the employees' right to be laid off inverse to seniority was qualified by the employer's right to consider "other factors[,] such as aptitude and ability," which "do not remain constant." *Id.* at 209.  In the 2008 Agreement, the employees' right to be laid off inverse to seniority is qualified by WUSA's right to discharge more senior employees if retaining them "would have an adverse effect on the operation of the Station when all factors are considered."  Horlick Decl. Ex. A § 4.17(F).

Finally, there is no obligation to arbitrate the grievance under the 2012 Agreement because Ms. Peterson's termination took place before the 2012 Agreement became effective.  The January 30, 2012 termination letter stated that Ms. Peterson's termination was effective upon receipt.  Compl. Ex. B, p. 1.  No collective bargaining agreement was in place at that time to require WUSA to provide Ms. Peterson with advance notice.  That Ms. Peterson filed her grievance on February 16, 2012, after the 2012 Agreement became

---

[1] Plaintiff argues WUSA should at least be required to arbitrate the threshold question of arbitrability. Pl.'s MSJ, pp. 16–17.  Plaintiff cannot, however, cite any contractual language indicating that the parties unmistakably agreed to arbitrate the threshold issue of arbitrability.

effective on February 9, 2012, is, unfortunately, irrelevant.

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendant's Motion for Summary Judgment and DENIES plaintiff's Motion for Summary Judgment. An order consistent with this decision accompanies this Memorandum Opinion.

_____

RICHARD J. LEON
United States District Judge